**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

DERRICK EVANS,

|                          | Plaintiff,          | 6:23-cv-1210 |
|--------------------------|---------------------|--------------|
| vs.                      |                     | (ECC/MJK)    |

CITY OF UTICA and
P.O. RICHARD V. LANGE,

                                        Defendants.

_____

Joshua M. Weinstock, Esq., *for Plaintiff*
Daniel K. Cartwright, Esq., *for Defendants*

**Hon. Elizabeth C. Coombe, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

Plaintiff Derrick Evans filed this action pursuant to 42 U.S.C. § 1983 and New York law against defendants City of Utica and Utica Police Officer Richard Lange, alleging Fourth and Fourteenth Amendment violations as well as state tort law claims, arising out of his June 11, 2023 arrest. Presently before the Court is Defendants' motion for summary judgment. Dkt. No. 36. The motion is fully briefed. Dkt. Nos. 36-22, 45, 48-1, 51, 54. For the following reasons, Defendants' motion for summary judgment is granted.

### I.    BACKGROUND[1]

On June 11, 2023, around 7:20 p.m., Defendant Lange and his partner saw Willie Gosier,

---

[1] The facts are drawn from the Defendants' Statement of Material Facts (Def. Stat.), Dkt. No. 36-21, Plaintiff's Counter Statement of Material Facts (Pl. Resp.), Dkt. No. 45-2, and Plaintiff's Statement of Additional Material Facts (Pl. Stat.), Dkt. No. 45-2, to the extent those facts are well-supported by pinpoint citations to the record as well as attached exhibits to the extent that they could be presented in admissible form at trial. Disputed facts are noted. The facts are construed in the light most favorable to Plaintiff as the non-moving party. *Gilles v. Repicky*, 511 F.3d 239, 243 (2d Cir. 2007).

who they recognized, driving a car that was at a stop sign. Def. Stat. ¶¶ 1, 2. Plaintiff was a passenger in the car. *Id.* at ¶ 10. Gosier's license was suspended, and both Lange and his partner testified that they knew that. Def. Stat. ¶ 6; Lange Deposition (Lange Dep.) at 33:16–35:20, [2] Dkt. No. 45-3; Dkt. No. 45-4 at 17:21–18:16.

The officers turned on their emergency lights to stop the car, and Gosier stopped the car in a driveway. Def. Stat. ¶¶ 7, 8. Lange approached the passenger side of the car where Plaintiff was sitting in the front seat. *Id.* at ¶¶ 9, 10. Lange knew that Gosier was a Gun Involved Violence Elimination (GIVE) offender. *Id.* at ¶ 11; Lange Dep. at 21:20–21, 34:5–20. According to Defendants, Lange also knew Gosier "to possibly possess firearms" and that he was "potentially . . . a suspect in shots fired that happened in the city a couple weeks prior." Lange Dep. at 34:19-20, 51:14-15; *see also* Def. Stat. ¶ 11 (stating that Lange knew Gosier was "possibly involved in a shots fired incident that occurred around a week ago") (citing Dkt. 36-5 at 6, Lange Narrative to Police Report); *see also* Lange Dep. at 34:15-18 ("I know him to potentially be a suspect in shots fired that happened in the city a couple weeks prior.").

Lange said, "Do me a favor my man, step out." Lange body-worn camera video (Bodycam) at 2:38–2:40, Dkt. No. 36-4; *see* Def. Stat. ¶ 14. Plaintiff got out of the car, and immediately said, "Don't touch me." Def. Stat. ¶ 14; Bodycam at 2:41–2:43. Lange told Plaintiff, "Put your hands on your head" and reached toward Plaintiff's sides, touched him, and started a frisk. Def. Stat. ¶ 20; Bodycam at 2:43–2:45. Meanwhile, Plaintiff continued to say, "Don't touch me" until

---

[2] Unless otherwise noted, citations to page numbers refer to pagination generated by the ECF system. Citations to the Lange Deposition are to the deposition pages.

Lange's hands left Plaintiff's side, and Plaintiff raised his hands above his head.  Bodycam at 2:43–2:48.  The parties dispute whether Plaintiff pushed Lange's arms away.  *Compare* Def. Stat. ¶¶ 18, 20–23 *with* Pl. Resp. ¶¶ 18, 20–23.  Lange then grabbed Plaintiff's right wrist. Def. Stat. ¶ 25.  The parties dispute whether Plaintiff pulled away and broke Lange's grasp on his wrist. *Compare* Def. Stat. ¶¶ 27–28 *with* Pl. Resp. ¶¶ 27–28.

Lange told Plaintiff to put his hands behind his back while Plaintiff said, "Please don't touch me."  Bodycam at 2:47–2:49.  As Lange stepped back, drew his taser, and pointed it at Plaintiff, Lange said, "You're gonna get Tased.  Put your hands . . ." Plaintiff and Lange continued:

| | |
|---|---|
| Plaintiff: | "I ain't doing nothing." |
| Lange: | "Put your hands behind your back. Put your hands behind your back. You're gonna get tased. Put your hands behind your back." |
| Plaintiff: | "Please don't touch me. I ain't doing nothing wrong." |
| Lange: | "Put your hands behind your back." |
| Plaintiff: | "Grabbing me out the car touching . . ." |
| Lange: | "Put your hands behind your back." |
| Plaintiff: | "You're gonna tase me I am recording it." |
| Lange: | "Put your hands behind your back." |
| Plaintiff: | "I am going to sue the shit out of you all [unintelligible]." |
| Lange: | "Put your hands behind your back." |

Def. Stat. ¶¶ 29, 32; Bodycam at 2:49–3:10.

Meanwhile, Plaintiff kept his hands above his head, and Lange continued to point the taser at Plaintiff.  Pl. Stat. ¶¶ 14–15; Bodycam at 2:49–3:10.  Plaintiff "was surrounded by [Gosier's]

car to his right, the door of the car at his back, [Lange] directly in front of him and another silver sedan . . . to his left." Pl. Stat. ¶ 10. After Lange pointed the taser at Plaintiff for 21 seconds, Lange "deployed a single five second cycle . . . into [the] left side of Plaintiff's abdomen." Def. Stat. ¶ 35; Pl. Stat. ¶ 15; Bodycam at 2:49–3:10. Plaintiff fell to the ground, and Lange placed him in handcuffs. Def. Stat. ¶¶ 36–37.

Plaintiff was charged with harassment, and he pled guilty to unrelated charges to resolve charges pending against him including the harassment charge. Def. Stat. ¶¶ 38–39. The charges against Gosier were dismissed. Pl. Stat. ¶ 24.

Utica Police Department policy states that the use of a taser "[a]gainst unarmed persons who are arguing with, talking back to, or discourteous to the police" and in "passive resistance situations:"

> should be avoided unless the totality of the circumstances indicates that other available options reasonably appear ineffective or would present a greater danger to the officer, the subject or others, and the officer reasonably believes that the need to control the individual outweighs the risk of using the device.

Pl. Stat. ¶ 17.

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A fact is material if it "might affect the outcome of the suit under

the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (explaining that summary judgment is appropriate where the nonmoving party fails to "'come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on' an essential element of a claim") (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010)).

If the moving party meets this burden, the nonmoving party must "set forth specific facts showing a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see Celotex*, 477 U.S. at 323–24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003).  Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (citing *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)).  Further, "mere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise

5

exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)) (cleaned up).

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Where the record includes video footage that clearly captures the events in question, courts should view "the facts in the light depicted by the videotape." *Id*. at 380–81.

## III.    DISCUSSION

The operative pleading—the Second Amended Complaint—alleges New York assault and battery claims against both Defendants, a § 1983 *Monell* failure-to-train claim against Utica, a § 1983 false arrest claim against both Defendants, a § 1983 excessive force claim against both Defendants, a § 1983 unlawful search and seizure claim against both Defendants, a New York law negligence claim against both Defendants, and a New York law negligent infliction of emotional distress claim against both Defendants. Dkt. No. 15.

### A.    Conceded Claims

Plaintiff "concedes his claims against all Defendants for false arrest, the Monell claims and both negligence claims (causes of action 2, 3, 6 & 7)." Plaintiff's Memorandum of Law in Opposition (Pl. Mem.) at 14, Dkt. No. 45. Summary judgment is therefore granted for Utica on all claims except New York law assault and battery, and summary judgment is granted for Lange on the claims for § 1983 false arrest, New York law negligence, and New York law negligent infliction of emotional distress.

6

### B.    Unlawful Frisk

Defendants seek summary judgment on Plaintiff's unlawful search claim arising out of Lange's frisk because, relying primarily on facts indicating that the driver was dangerous, Lange had reasonable suspicion to believe that Plaintiff was armed and dangerous.    Defendants alternatively argue that Lange is entitled to qualified immunity because "Lange had some kind of articulable facts to support the weapons check and that is all that is required for him to be awarded qualified immunity."[3]    Defendant's Memorandum of Law (Def. Mem.) at 9–10, 13–15, 38, Dkt. No. 36-22.    Plaintiff responds that Lange lacked reasonable suspicion that was particularized to Plaintiff to frisk him, and that suspicion regarding Gosier was not "transferable" to Plaintiff. [4]    Pl. Mem. at 13–14.    Plaintiff does not explicitly address whether Lange is entitled to qualified immunity for the frisk.

To lawfully frisk a person who has been stopped, "[a] police officer must have reasonable

---

[3] Defendants argue that the Second Amended Complaint does not contain any factual allegations, but this argument is not addressed because the Second Circuit has concluded that it is procedural error to consider a motion for summary judgment under the Federal Rule of Civil Procedure 12(b)(6) standard where the parties "compiled a substantial factual record through a lengthy period of discovery, defendants styled their motion as one for summary judgment, and the parties vigorously contested the facts underpinning [the plaintiff's] claims." *Miller v. Lamanna*, 169 F.4th 118, 131 (2d Cir. 2026).    Even if it were appropriate to consider this argument, the Second Amended Complaint sufficiently alleges a claim for unlawful search based on the frisk.    *See* Second Amended Complaint, Dkt. No. 15 ¶ 19, 75, 80 (incorporating the prior allegation that Plaintiff was "frisked" and alleging that Plaintiff was subject to "searches . . . without lawful basis [or] reasonable suspicion").

[4] Plaintiff does not argue that the car stop was not lawful, and the Court therefore infers that any such claim was abandoned.    *See Jackson v. Fed. Exp.*, 766 F.3d 189, 197–98 (2d Cir. 2014) ("in the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition [to a summary judgment motion] that relevant claims . . that are not defended have been abandoned.").

suspicion not only that criminal activity is afoot, but also that the person suspected is 'armed and dangerous.'" *United States v. Weaver*, 9 F.4th 129, 139 (2d Cir. 2021) (en banc) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)).  An officer "need not be absolutely certain that the individual is armed." *Id.* at 149 (quoting *Terry*, 392 U.S. at 27).  "[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27.  "The purpose of a protective search is to allow an officer to do his job safely, and so the only question for Fourth Amendment purposes is whether the officer's basis for thinking that the suspect might be carrying a weapon rises to the level of reasonable suspicion." *Weaver*, 9 F.4th at 149 (footnote omitted).  "And context is king in Fourth Amendment analysis." *Id.*  This applies equally to the passenger of a car that the police have stopped for a traffic infraction, so long as there is "reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Arizona v. Johnson*, 555 U.S. 323, 327 (2009).

"The reasonable suspicion standard is 'not high.'" *Weaver*, 9 F.4th at 140 (quoting *United States v. Bailey*, 743 F.3d 322, 332 (2d Cir. 2014) (citation omitted)).  "It merely requires that a police officer 'be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion [on the citizen's liberty interest]." *Id.* (alteration in original) (quoting *Terry*, 392 U.S. at 21).  But it still requires more than an "inchoate and unparticularized suspicion or 'hunch.'" *Terry*, 392 U.S. at 27.  There must be "'specific and articulable facts which, taken together with rational inferences from those facts,' provide a 'particularized and objective basis'" for an investigative stop or a weapons frisk. *United States v. Patterson*, 25 F.4th 123, 136 (2d Cir. 2022) (citation omitted) (quoting *Terry*, 392 U.S. at 21 and *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).

8

Mere proximity to another "independently suspected" does not provide reasonable suspicion that one is armed or dangerous. *United States v. Jaramillo*, 25 F.3d 1146, 1152 (2d Cir. 1994) (quoting *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979)). On the other hand, "it is obviously reasonable to believe that individuals in a . . . vehicle have some connection." *Jaramillo*, 25 F.3d at 1152. *See also Wyoming v. Houghton*, 526 U.S. 295, 304 (1999) (noting that "a car passenger—unlike the unwitting tavern patron in *Ybarra*—will often be engaged in a common enterprise with the driver").

Furthermore, the Second Circuit and district courts in this Circuit have considered the dangerousness of other occupants in a car when deciding whether an officer had reasonable suspicion for a frisk. *See, e.g.*, *Weaver*, 9 F.4th at 149–50 (mentioning that "the circumstances of the traffic stop suggested that the vehicle's occupants might be dangerous" including actions by non-defendant rear passenger); *United States v. Winkfield*, No. 16-cr-98, 2016 WL 4190415 at *9 (S.D.N.Y. Aug. 1, 2016) (mentioning "the suspected narcotics use by the [non-defendant] driver" after explaining that "experienced law enforcement officers recognize the link between narcotics and weapons possession and that where there are narcotics, it is very likely that law enforcement will also find dangerous weapons") (collecting cases); *United States v. Harris*, No. 13-cr-556, 2013 WL 6728136 at *5 (S.D.N.Y. Dec. 20, 2013) (mentioning that, "prior to the car stop, the officers had observed someone running quickly away from the car, suggesting to them that the person had been in some kind of danger," and "upon questioning, the officers observed the passengers as nervous, fidgety, and evasive, which further factored into their reasonable suspicion of dangerousness."); *United States v. Pagan*, No. 12-cr-267, 2013 WL 3967641 at *3-4 (D. Conn. July 31, 2013) (mentioning that "the police officers knew that several of the passengers, including

9

the defendant, were  associated with violent street gangs, thus heightening their suspicion that one or more of them could be armed and dangerous").

In addition, the First and Fifth Circuits have concluded that the dangerousness of the driver may contribute to reasonable suspicion to frisk a passenger.  *See United States v. Ducksworth*, 168 F.4th 764, 769 (5th Cir. 2026); *United States v. Tiru-Plaza*, 766 F.3d 111, 121–22 (1st Cir. 2014) (noting that "although the discovery of a driver's dangerousness may not, in every case, create reasonable suspicion that a passenger has a gun, it would be beyond folly for our court to ask police officers to ignore the clear relevance of discovering a hidden firearm on the driver").

Here, Defendants argue that the officers knew three facts indicating that Gosier was dangerous: (1) his status as a GIVE offender, (2) his possible possession of firearms, and (3) his possible involvement as a suspect of a shots fired a week prior.[5]  Def. Stat. ¶ 11.  Plaintiff does not dispute that the officer knew that Gosier was a GIVE offender or about his possible possession of firearms, but takes the position that there is no evidence to support Gosier's possible involvement in a shots fired incident.[6]  Pl. Resp. ¶ 11.

---

[5] Defendants also point to the Rome Police Department's seizure of a Sig Sauer semi-automatic handgun from the pants of a different passenger in Gosier's car earlier that day.  Def. Stat. ¶ 12; Dkt. No. 36-3 at 18:18–19:1, 20:5–8, 20:23–21:9, 22:3–4; Dkt. No. 36-5 at 6.  At oral argument, however, counsel for Defendants stated that he did not believe that there was any evidence in the record that the Rome Police Department notified the Utica Police Department about this seizure before the frisk.  Dkt. No. 54.  Counsel for Defendants asked for an opportunity to confirm his representation, but he did not address this issue in his post-hearing submissions.  *Id.*  This fact therefore cannot be considered at this stage of the litigation because Defendants did not cite to any record evidence that Lange, his partner, or the Utica Police Department learned about that stop before the frisk.

[6] Contrary to Plaintiff's argument, Lange testified that he knew about Gosier's possible involvement in a shots fired incident.  Lange Dep. at 34:19-20, 51:14-15.

To the extent that Defendants point to Plaintiff's failure to cooperate before the frisk by immediately telling Lange not to touch him, they have not offered any authority that a lack of cooperation alone indicates that Plaintiff was dangerous. *See United States v. Hussain*, 835 F.3d 307, 316 (2d Cir. 2016) ("But the officers did not point to any other specific facts suggesting that [the defendant's] failure immediately to comply with [an officer's] commands justified a reasonable suspicion that he or [a passenger in the car] was *dangerous*."). Defendants also argue that Plaintiff's statement not to touch him was evidence that Plaintiff did not want to be frisked because "individuals secreting weapons on their person often object to such pat frisks." Def. Mem. at 15. But the only support Defendants offer for this argument is Lange's narrative in a police report stating that while he was conducting the frisk, Plaintiff "continuously stated, 'don't touch me' and then pushed my arms with his hands" and that Plaintiff's "actions heightened my suspicion that he was in possession of a firearm also coped [sic] with the fact that he was in the same vehicle as Gosier, a known GIVE offender." Dkt. No. 36-2 at 14. Even if the police report could be admitted as evidence of Plaintiff's conduct during the frisk, "'[r]easonable suspicion must arise *before* a search or seizure is actually effected.'" *See United States v. Simmons*, 560 F.3d 98, 107 (2d Cir. 2009) (quoting *United States v. Swindle*, 407 F.3d 562, 568 (2d Cir. 2005))(emphasis added by *Simmons*).

Finally, there is no evidence of other facts that courts often consider when deciding whether there was reasonable suspicion for a frisk such as (1) "threatening or otherwise unusual movements," *Florida v. J.L.*, 529 U.S. 266, 268 (2000), (2) furtive behavior, *Weaver*, 9 F.4th at 150, (3) high crime area, *id.*, (4) violent criminal history or reputation, *Pagan*, 2013 WL 3967641, at *3-4, (5) visible signs of concealing a weapon, *United States v. Padilla*, 548 F.3d 179, 189 (2d

11

Cir. 2008); *United States v. McCrimmon*, No. 11-cr-575, 2012 WL 5974070, at \*6 (S.D.N.Y. Nov. 26, 2012), or (6) attempt to flee, *Winkfield*, 2016 WL 4190415, at \*9.

On this record and viewing the evidence in the light most favorable to the Plaintiff, the question is whether the officers' knowledge about Gosier's status as a GIVE offender, his possible possession of firearms, and his possible involvement as a suspect of a shots fired incident one week earlier together with Plaintiff's statement, "don't touch me," was a sufficient basis for Lange to frisk Plaintiff. On this limited record, viewing the evidence in the light most favorable to Plaintiff, Defendants have not established that no reasonable juror could conclude that Lange lacked reasonable suspicion to frisk Plaintiff.

Even assuming, however, that the frisk violated Plaintiff's constitutional rights, Lange is entitled to qualified immunity. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012); *see also District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018) (quoting *Reichle*, 566 U.S. at 664) (explaining that police officers are entitled to qualified immunity "unless (1) [they] violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time'"). District courts have discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The Court is exercising its discretion to address the second prong first.

"'A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Zorn v. Linton*, 607 U.S. \_\_\_\_,

12

No. 25–297, 2026 WL 795469, at *2 (U.S. Mar. 23, 2026) (quoting *Rivas-Villegas v. Cortesluna,* 595 U.S. 1, 5 (2021) (per curiam)).  On the other hand, "[a] right is not clearly established if existing precedent does not place the constitutional question 'beyond debate.'"  *Id.* (quoting *Rivas-Villegas*, 595 U.S. at 5).

"To find that a right is clearly established, courts generally 'need to identify a case where an officer acting under similar circumstances . . . was held to have violated' the Constitution." *Zorn*, 2026 WL 795469, at *2 (quoting *Escondido v. Emmons*, 586 U.S. 38, 43 (2019) (per curiam) (internal quotation marks omitted).  "The relevant precedent must define the right with a 'high degree of specificity,' so that 'every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply.'"  *Id.* (quoting *Wesby*, 583 U.S. at 63) (quotation marks omitted).  In addition, "[p]rinciples stated generally, such as that 'an officer may not use unreasonable and excessive force,' do not suffice."  *Id.* (quoting *Kisela v. Hughes*, 584 U.S. 100, 105 (2018) (per curiam).  "In short, officers receive qualified immunity unless they could have 'read' the relevant precedent beforehand and 'know[n]' that it proscribed their specific conduct."  *Id.* (quoting *City and County of San Francisco v. Sheehan*, 575 U.S. 600, 616 (2015)).

For a § 1983 unlawful frisk claim, defendants are "entitled to immunity if they reasonably could have believed the frisk was legal."  *Berbick v. Precinct 42*, 977 F. Supp. 2d 268, 279 (S.D.N.Y. 2013) (citing *Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007)); *see also Sloley v. VanBramer*, 945 F.3d 30, 43 (2d Cir. 2019) (quotation and citation omitted) (stating that "when the Fourth Amendment requires an officer to have reasonable suspicion before undertaking a search, an officer is entitled to qualified immunity unless we can say on the somewhat unique facts before us that it is clearly established that no reasonable suspicion justified" the search).

13

Applying those principles here, the parties have not identified any cases where the Supreme Court or the Second Circuit have concluded that the dangerousness of a driver may not create reasonable suspicion that a passenger is dangerous, and the Court has not identified any. As a result, there was no "relevant precedent" that Lange could have "read" before the frisk and "know[n] that it proscribed [his] specific conduct." *Zorn*, 2026 WL 795469, at *4. In fact, as discussed above, the Second Circuit and district courts in this Circuit have mentioned the dangerousness of a car occupant along with other facts when deciding whether a frisk was lawful. In addition, the First and Fifth Circuits have concluded that a driver's possession of a firearm may create reasonable suspicion to frisk a passenger. Although all of those cases involved far more robust indicia of dangerousness than the sparse record here, they nevertheless suggest that a driver's dangerousness may contribute to reasonable suspicion to frisk a passenger.

In addition, Plaintiff did not cite to any case clearly establishing that the facts here—Plaintiff was a passenger in a car where the driver was a known GIVE offender who possibly possessed firearms and was "possibly involved in a shots fired incident" a week earlier and Plaintiff immediately stated, "don't touch me"—did not meet the "not high" reasonable suspicion standard, and the Court has not identified any. *Weaver*, 9 F.4th at 140. As a result, even though the indicia of the driver's dangerousness is thin, and the only direct evidence regarding Plaintiff's dangerousness is his immediate statement, "don't touch me," the Court is compelled to conclude that there is no clearly established law prohibiting Lange's decision to frisk Plaintiff. As a result, an officer could "reasonably believe that the frisk was legal." *Berbick*, 977 F. Supp. 2d at 279. Finally, "[g]iven that motor-vehicle stops 'are especially fraught with danger to police officers,'" this Court "will not second-guess the 'split-second judgments' they made in these circumstances."

14

*King v. Davis*, No. 25-966-cv, 2026 WL 762399, at *8 (2d Cir. Mar. 18, 2026) (summary order) (quoting *Michigan v. Long*, 463 U.S. 1032, 1047 (1983) and *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  Therefore, summary judgment is granted on Plaintiff's unlawful search claim.

### C.    Excessive Force

Defendants seek summary judgment on Plaintiff's excessive force claim arguing that Lange's taser use was objectively reasonable because Plaintiff was actively resisting arrest, or, alternatively, that Lange is entitled to qualified immunity.  Def. Mem. at 24–28, 39–41.  Plaintiff argues there is a genuinely disputed material fact about whether Plaintiff pushed Lange, precluding summary judgment for the Defendants.  Pl. Mem. at 6.  Plaintiff also emphasizes that he had his hands in the air for 27 seconds before he was tased and that "any resistance was passive."  Pl. Mem. 7.

"In general terms, a claim of excessive force under the Fourth Amendment is analyzed under a standard of 'objective reasonableness.'"  *Matusak v. Daminski*, 165 F.4th 702, 713 (2d Cir. 2026) (quoting *Graham*, 490 U.S. at 395).  In addition, "[t]he Supreme Court 'has long recognized that the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'"  *Id.* (quoting *Graham*, 490 U.S. at 396.)  "Whether the force used by an arresting officer was excessive is determined by an objective balancing test where "the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests" is balanced "against the countervailing governmental interests at stake."  *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010).  At least three factors guide this determination: "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively

15

resisting arrest or attempting to evade arrest by flight." *Tracy*, 623 F.3d at 96 (citing *Graham*, 490 U.S. at 396). This inquiry into the reasonableness of the use of force considers the totality of the circumstances including "the history of the interaction, as well as other past circumstances known to the officer." *Barnes v. Felix*, 605 U.S. 73, 80–81 (2025).

Nonetheless, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Moreover, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97. Courts must account for the fact that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* at 396 (citations omitted). "Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004).

As to the first prong of the *Graham* analysis, Defendants argue that Lange had probable cause to arrest Plaintiff for harassment in the second degree because Plaintiff "pushed" Lange's "arms away with his hands" and that was unwanted physical contact. Def. Mem. at 17, 23 (quotation omitted). "A person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person . . . [he] or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same." N.Y. Penal Law § 240.26(1). Although the parties dispute whether Plaintiff engaged in the conduct giving rise to

16

the harassment charge–pushing Lange's arms away and breaking Lange's grasp on his wrist–Plaintiff did not respond to Defendants' argument that there was probable cause for the harassment charge. In addition, Plaintiff conceded probable cause for the charges resolved by his guilty plea. *See* Def. Mem. at 18-21. *See also Timmins v. Toto*, 91 F. App'x 165, 166-67 (2d Cir. 2004) ("[B]y pleading guilty to the stipulated but lesser offense, [the plaintiff] conceded that [the defendant] had probable cause for all charges covered by the plea agreement."); *Parker v. Robenski*, No. 6:13-cv-668, 2015 WL 4041734, at *4 (N.D.N.Y. July 1, 2015) (guilty plea to one charge in satisfaction of other charges concedes probable cause for 'all claims resolved by virtue of such a plea"); *Harris v. City of New York*, No. 09-cv-3474, 2013 WL 4858333, at *6 (E.D.N.Y. Sept. 19, 2013) (concluding that plaintiff's false arrest claim was barred where guilty plea satisfied charges in an indictment and charges in a separate criminal complaint); *Powers v. Sickler*, No. 93-cv-617, 1995 WL 146272, at *8 (N.D.N.Y. Mar. 31, 1995) ("[P]laintiff's conviction for disorderly conduct in satisfaction of the charges brought against him is conclusive evidence of the existence of probable cause"). In any event, harassment in the second degree is not a serious offense given that the maximum punishment is 15 days of imprisonment. N.Y. Penal Law § 70.15(4). The first *Graham* factor therefore favors Plaintiff.

Regarding the second factor, the parties do not dispute that Plaintiff failed to comply with commands to place his hands behind his back, and had his hands in the air for 27 seconds before Lange discharged the taser. However, such conduct alone does not create an immediate threat. *See Brown v. City of New York*, 798 F.3d 94, 102 (2d Cir. 2015) (concluding that the plaintiff "posed no threat whatever to the safety of the officers or others" where her "'resistance' was a refusal to permit the easy application of handcuffs by placing her hands behind her back"); *Harris*

*v. Leon*, No. 20-cv-10864, 2023 WL 2051171, at *3 (S.D.N.Y. Feb. 16, 2023) ("While speaking with the Individual Defendants, Plaintiff raised his hands above his head, a gesture that, in context, indicated that he was not a threat to the officers."). Otherwise, the parties dispute whether Plaintiff pushed Lange's "arms away with his hands." *Compare e.g.* Def. Stat. ¶¶ 18, 20–23 *with* Pl. Resp. ¶¶ 18, 20–23 and Def. Stat. ¶¶ 27–28 *with* Pl. Resp. ¶¶ 27–28 (disputing whether Plaintiff pushed Lange's arms away and pulled away to break Lange's grasp on his wrist). It is also unclear to what extent the thin record of Gosier's dangerousness and Plaintiff's immediate statement not to touch him would tip the second *Graham* factor in Defendants' favor. Accordingly, and viewing the evidence in the light most favorable to the Plaintiff, the second *Graham* factor does not weigh significantly in favor of Defendants for purposes of the summary judgment motion.

The third *Graham* factor weighs against Plaintiff, as no reasonable jury could fail to conclude that Plaintiff was resisting arrest at the time the force was deployed. "For purposes of the excessive force analysis, resisting arrest can include passive resistance or non-compliance." *Harris*, 2023 WL 2051171, at *3 (citing *Brown*, 798 F.3d at 103 ("[E]ven if Brown's unwillingness, while standing, to offer her hands for handcuffing . . . is found to be resisting arrest, that non-threatening form of resistance would be only one factor. . . .")). Here, notwithstanding the dispute of fact concerning whether Plaintiff pushed Lange's arms away and pulled away to break Lange's grasp on his wrist, the video evidence shows Plaintiff keeping his hands in the air, repeatedly stating "don't touch me," and failing to comply with Lange's instructions to put his hands behind his back. *See Harris*, 2023 WL 2051171, at *3 (concluding that "no reasonable jury could fail to conclude that Plaintiff was resisting arrest at the time the force was deployed" where "[t]he Video clearly shows Plaintiff resisting arrest by defying Defendants' instruction to step way

18

from the car, stating that he did not care if he was arrested and finally, moving his arm away from Defendants when they approached him to effectuate his arrest.") (citations omitted).

As set forth above, the application of the *Graham* factors on this record does not compel a finding that Defendants are entitled to summary judgment on the merits of Plaintiff's excessive force claim. *See Brown*, 798 F.3d at 102 (concluding that "[t]he assessment of a jury is needed in this case" where "most of the facts concerning the application of force [were] undisputed," but "a jury [would] have to decide whether Fourth Amendment reasonableness was exceeded when [the plaintiff] was taken to the ground after refusing to put her hands behind her back and when officers struggled with her on the ground and used pepper spray to accomplish handcuff" and explaining that "even if Brown's unwillingness, while standing, to offer her hands for handcuffing and, while on the ground, to offer her left arm to complete the handcuffing is found to be resisting arrest, that non-threatening form of resistance would be only one factor to be considered along with the minor nature of the disorderly conduct violation, the absence of actual or threatened harm to the officers, and the degree of force, including taking her to the ground and twice applying pepper spray."). Accordingly, Defendants' motion is denied in this respect.

Defendants argue in the alternative that Lange is entitled to qualified immunity. As previously discussed, "[q]ualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle*, 566 U.S. at 664. "'A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Zorn*, 2026 WL 795469, at *2 (quoting *Rivas-Villegas*, 595 U.S. at 5). On the other hand, "[a] right is not clearly established if existing precedent does not place the

19

constitutional question 'beyond debate.'" *Id.* (citation omitted). "Pre-trial resolution of the defense of qualified immunity may be thwarted by a factual dispute." *Eaton v. Estabrook*, 144 F.4th 80, 89 (2d Cir. 2025) (cleaned up).

Regarding the use of a taser, "[i]t is beyond doubt that any reasonable police officer would know that the use of a taser . . . constitutes significant force." *Jones v. Treubig*, 963 F.3d 214, 226 (2d Cir. 2020). In addition, "by February 1, 2018, it was clearly established that officers may not use significant force against arrestees who are compliant or non-resistant and non-threatening." *Matusak*, 165 F.4th at 715. At least one other district court in this Circuit has concluded that as of September 2020, there was no "clearly established law that the use of significant force against a non-compliant but non-threatening arrestee amounts to constitutionally excessive force." *Harris*, 2023 WL 2051171, at *7. As the *Harris* court explained, "the Second Circuit held that it was not clearly established as of November 15, 2011, that it was unconstitutional as a matter of law for the police repeatedly to use pepper spray and force the plaintiff to the ground in order to effectuate her arrest after she repeatedly refused to follow instructions of police officers who were trying to arrest her in" *Brown v. City of New York*, 862 F.3d 182, 183 (2d Cir. 2017) (*Brown II*). 2023 WL 2051171, at *6. In both *Brown II* and *Harris*, the plaintiff was "resisting arrest and not following instructions, but was not violent or threatening." *Id.*

Plaintiff has not identified any case that would have provided Lange with notice that tasing Plaintiff under the circumstances viewed in the light most favorable to Plaintiff in this action violated the constitution – that is, tasing an arrestee who refuses to comply with orders to put his hands behind his back after repeated warnings to do so, but does not present a threat to the officer. Nor is the court aware of any then-existing authority that Lange "could have 'read'" "and

20

'know[n]' that it proscribed" his "specific conduct." *Zorn*, 2026 WL 795469, at *2 (citation omitted).  Plaintiff cites to *Jones*, where the Second Circuit stated that "in April 2015, it was clearly established in this Circuit that it is a Fourth Amendment violation for a police officer to use significant force against an arrestee who is no longer resisting and poses no threat to the safety of officers or others."  963 F.3d at 225.  However, *Jones* addressed an arrestee who was no longer resisting arrest and was "face down on the ground with his arms spread."  *Id.* at 230.  Plaintiff also relies on *Tracy v. Freshwater*, where the Second Circuit "had clearly established that it is objectively unreasonable for officers to use significant force . . . against a suspect who is not resisting, and who is retrained in handcuffs, thereby not posing a threat to officer safety." *Matusak*, 165 F.4th at 714.  Here, however, unlike *Tracy,* Plaintiff was not restrained in handcuffs, and was resisting.

*Brown II* suggests that as of 2017, no Supreme Court or Second Circuit decision had clearly established that the force used in that case—the repeated use of pepper spray, the kicking of [the plaintiff's] legs out from under her to bring her to the ground, and [the officer's] using his hand to push [the plaintiff's] face onto the pavement . . . after Brown refused to comply with the instructions to place her hands behind her back for handcuffing," and "[d]uring her noncompliance with the instructions, she was warned prior to each application of the pepper spray"—was excessive in those circumstances.  862 F.3d at 189.  Plaintiff's "argument that she posed no threat did not make a difference to" the *Brown II* analysis. *Matusak*, 165 F.4th at 720.  Like the plaintiff in *Brown*, Plaintiff did not comply with instructions to place his hands behind his back, and he was warned that a taser would be used.   The Court is therefore compelled to conclude that Lange is entitled to qualified immunity because there was no clearly established law that significant force

21

could not be used on someone who is non-compliant, but non-threatening.  Accordingly, summary judgment is granted on the excessive force claim.

### D.    State Law Claims

Plaintiff's remaining claims are New York state assault and battery claims.  "A district court may decline to exercise supplemental jurisdiction over pendent state law claims if it has dismissed all claims over which it has original jurisdiction."  *Allen v. City of New York*, No. 24-2589-cv, 2025 WL 3152723, at *2 (2d Cir. Nov. 12, 2025) (citing 28 U.S.C. § 1367(c)(3)).  Indeed, the district court "may (and indeed ordinarily should) kick the case to state court."  *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 32 (2025) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966)).  This "is true even after discovery and summary judgment."  *King v. Davis*, No. 25-966-cv, 2026 WL 762399, at *3 (2d Cir. Mar. 18, 2026) (citing *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 302, 308 (2d Cir. 2003)).  "When deciding whether to exercise jurisdiction over pendent state law claims, courts weigh the factors of 'judicial economy, convenience, fairness, and comity.'"  *Allen*, 2025 WL 3152723, at *2 (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988), *abrogated on other grounds by Royal Canin*, 604 U.S. at 39–41); *see also Kolari v. New York–Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (noting that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.") (quoting *Cohill*, 484 U.S. at 350 n.7).

For the reasons previously set forth, Plaintiff's federal claims are subject to dismissal in this action.  After balancing all of the relevant factors, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims, which are dismissed without prejudice.

22

## IV.   CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion for summary judgment, Dkt. No. 36, is **GRANTED,** and it is further

**ORDERED** that Plaintiff's Second Amended Complaint is **DISMISSED with prejudice** as to Plaintiff's 42 U.S.C. § 1983 claims for Fourth Amendment unlawful frisk and excessive force, and it is further

**ORDERED** that Plaintiff's Second Amended Complaint is **DISMISSED without prejudice** as to Plaintiff's state law assault and battery claims, and it is further

**ORDERED** that the Clerk of the Court is directed to close this case.

**IT IS SO ORDERED.**

Dated: March 31, 2026

_____

Elizabeth C. Coombe
U.S. District Judge

23